## C. B. NEW v. C. A. WRIGHT.

1. PARTNERSHIP—MISCONDUCT OF PARTNERS—INJUNCTION.—Complainant and defendant formed a copartnership for the purpose of sawing lumber from timber to be taken from the land of complainant, the defendant to have the control and management of the business (it being the object of complainant to convert his timber into active capital), and the managing partner ceased to procure timber from complainant's land, but obtained it elsewhere and from others ; this was using the mill in a manner not authorized by the contract of partnership, and an injunction will be granted restraining him from such proceeding.

2. INJUNCTION BOND—DISSOLUTION—RECEIVER.—Where the sureties in an injunction bond are insufficient, the court ought not, for that cause, to dissolve the injunction without first giving the complainant reasonable time to procure additional sureties, or to present a sufficient bond. Rev. Code, 548, art. 58. And where it is shown that the running of the mill for a period of three years resulted in a loss of seven thousand dollars, it would justify a dissolution of the partnership and the appointment of a receiver.

3. SAME.—The appointment of a receiver has the effect to put an end to the partnership, and is always a delicate duty, requiring the adoption of a course which it is not always easy to determine upon—the selection of a mode of proceeding best calculated to protect and preserve the interests of both parties. And to justify the dissolution of a partnership on account of the misconduct, abuse, or ill-faith of one partner, it is not sufficient to show that there is a temptation to such misconduct, abuse or ill-faith, but there must be an unequivocal demonstration, by overt acts, or gross departure from duty, that the danger is imminent, or the injury already accomplished. Story on Part., 464, § 288.

4. MISCONDUCT OR CONTROVERSY—CAUSE OF DISSOLUTION.—Where a concern of any character or kind, covering a partnership, is broken up by controversial suits, and it is apparent that there can be no agreement between the parties in interest for its continuance, a receiver will be appointed. 4 Sandf. Ch. R., 377 ; Edwards on Receivers, 330. And a dissolution of a partnership may be granted and a receiver appointed on account of the gross misconduct of one or more of the partners. 1 Story's Eq., 635, § 672.

Appeal from the chancery court of Jefferson county. SMI-
LEY, J.

The appellant assigned :

1st. The court erred in sustaining the motion to dissolve the
injunction, and in disallowing said injunction.

2d. The court erred in overruling the motion for the appoint-
ment of a receiver.

*Geo. L. Potter*, for the appellant.

" As want of equity " is the only ground on which this
motion could have been sustained, we look to the grounds
stated for an injunction ; and upon perusal of the bill, it is
plain that New was entitled to the injunction, no matter what
may be the construction of the agreement in relation to the
expense of running or operating the mill.

It is plain that all the items of expenditure mentioned in
the agreement, relate to the purchase of machinery, etc., and
labor and material for the construction of the mill, and not
to the running of it after completion.   This is undeniable
with regard to all the items, except wages of laborers ; and
we insist that the laborers referred to were those to be em-
ployed in construction only.   All the expenses, including
the wages referred to, were to be adjusted by paying one-half
of them out of first sales of lumber, and then the mill and
machinery was to be joint property.

Looking to the agreement of partnership, what are the
facts constituting the equity of the bill ?   New lives at a
distance, and Wright was to superintend the whole business,
get the logs from New's land, saw them, sell the lumber on
joint account, and account to New for his share.   He was to
keep correct books of account of his operations, sales,
receipts, etc., which were always to be open to the inspection
of New, and was to account for and pay to New his share of
proceeds.   The charges are that he has ceased to get timber
from the land of New, as he agreed to do, and has purchased
large quantities of timber from third parties, using the joint
mill to saw his own logs.   Charges that Wright has been

repaid in the mode provided in the agreement, one-half of all his expenditures for machinery and construction of mill, whilst New has been repaid only part. Charges that; although Wright has run the mill a long time, and is still running it, and large quantities of lumber have been sold by Wright, and the money received by him—he has failed to account to New for any part of it. Charges that New has sought with Wright a settlement of his share of proceeds, but has sought in vain. Charges that the books of account of the mill, kept by Wright, are incorrect. Charges that New's share of lumber already sawed at the mill, and sold by Wright, amounts to many thousand dollars—that on a fair settlement, Wright will owe him a sum so large that the same cannot be paid out of any property of defendant within jurisdiction of the court

Such a bill against such a partner, seeking an account and payment, an injunction to restrain and prevent further fraud, a receiver and dissolution and settlement of the partnership, seems to show abundant equity. Wright swears that the mill went into operation in September, 1865, and he has sold some $23,000 worth of lumber, and the expenses have been some $30,000. If this be so, the partnership should be dissolved, notwithstanding his expectation of future profit. Such a losing concern should be closed. He can saw on the mill $4,000 worth of lumber a week, and the lath machine will pay expenses of running the mill, and stock logs can be floated to the mill for $1,000—with this showing, it is impossible to conceive that no profit was made in previous years.

1st. This bill charges no specific fraudulent act. It alleges no particular misconduct of the defendant.

There were no sufficient definite particular averments of misconduct on the part of the defendant charged by the bill against him, to authorize an injunction, or the appointment of a receiver. Code, 550, art. 65; Smith Chan. Prac.; Mayes v. Rose et al., Freeman's Ch. Rep., 718.

Examine the agreement and take the evidence of Captain Wright, and this court will see that the appellant shows no

right to the mill property, for the debts, for the construction, for the machinery, for the labor, for the lumber and other expenses, had not been met; that by the terms of agreement he had " no property until the whole property had been fully paid for." The appeal was erroneous under the circumstances, and the order making it operate as a *supersedas.* Code, 555, art. 102.

2d. The agreement shows that there was no partnership to exist between these parties until Captain Wright should have erected a saw-mill with all its accompaniements, and fully paid for it. In the agreement they used the following words: " Now the party of the first part hereby agree to permit the said Wright, etc., to use the cypress timber on Buena Vista plantation," etc. . Do not the words " permit " and " use" the " cypress," etc., show that they were used to avoid the identification of appellant as a partner, or one liable for the payment of any debts in the matter? Wright was to pay him for the use of any old machinery that was on the place. Wright, as his testimony and the bill show, did pay him for it. In the next clause, Wright obligated himself to construct a saw-mill, pay for all the machinery, materials, labor, etc., and to superintend the businass. New was to do nothing but " allow him ; " and that very word is used, " allow him " to put upon this mill site, buildings, machinery, etc., for a saw-mill.

The language of the agreement is : " It is further agreed, after the reimbursement of both parties in the manner mentioned, the said mill shall be run by said Wright of second part, and the profits equally divided between the said New and the said Wright." Now what reimburesement by the terms of the agreement was Dr. New to receive? Why, for the machinery on his plantation, that Captain Wright could use in putting up the mill. The testimony of Captain Wright, on the hearing of the motions for the dissolution of the injunction, and the appointment of a receiver, shows numerous reasons why the mill had not reimbursed him ; that it was in debt to him about seven thousand dollars.

PEYTON, C. J.:

It appears from the record in this case, that Charles B. New and Charles A. Wright, on the 13th day of July, 1865, formed a partnership in the mill and lumber business, for the term of five years from that date.

The bill of complaint of Charles B. New, filed in the chancery court of Jefferson county, on the 19th day of March, 1869, states that he was possessed of a large tract of land in said county of Jefferson, commonly called his "Buena Vista" plantation, on which was a great number of cypress trees, well suited and valuable for the purpose of being sawed into lumber, and that on said tract there was a valuable site for a saw-mill, convenient to said cypress timber, and to the Mississippi river, for shipping lumber from such mill site, and that on said place he had material and machinery suitable for the construction of a saw-mill in part. That by the terms of said partnership, the said Charles A. Wright, was to use the cypress timber on said tract of land, for the said term of five years, to such an extent as might be necessary to carry on the saw-mill and lumber business, and to dispose of the same, according to the terms of the contract of partnership; that complainant was to allow said Wright, the use of the machinery, then on said place, as part of the machinery of said saw mill, to be erected by said Wright, on said mill site, as soon as was practicable, and he was to place therein, circular saws, and also machinery necessary and usual for the purpose of sawing lumber, personally to superintend the construction of said mill, the arrangement of the machinery, the hiring of laborers, and to defray all expenses incurred in the building of the mill, the purchase of machinery, wages of laborers, and all other expenses incident to the running of the said mill, and for which the complainant was not in any way to be responsible. But one-half of the sum thus expended in the construction of the mill, the purchase of the machinery, and the hire of labor by the said Wright, is to be paid to him, and one-half of the machinery, other property and labor furnished by complainant, to be paid to him

out of the proceeds of the first sales of lumber, sawed in said mill, and when such payments were so made to the said parties, the mill and machinery should be the joint property of the complainant and said Wright, who was to continue to run the mill, and the profits resulting therefrom, to be equally divided between them; that complainant was not to be liable for any of the debts contracted by said Wright, in the purchase of machinery, hiring of labor, running the mill, or in any other manner whatever.

The bill states that complainant was in part paid for his half of the machinery, materials and labor, furnished by him in the erection of said mill, and that said Wright was also paid his entire half of the outlay in the purchase and erection of machinery, labor and materials in building said mill. And when these several outlays were paid to complainant and said Wright out of the proceeds of the sales of the first lumber sawed, the said mill was to be run by the said Wright, as their joint property, at his sole expense, and that complainant was entitled to one-half of the proceeds of the lumber sold; that by the terms of the partnership, the complainant's capital, to-wit: The mill site and cypress timber, were to be set-off against the services of said Wright and expenses of running said mill and selling the lumber made thereat, for which complainant was to be in no manner bound, and that he is entitled to one-half of the proceeds of all the lumber sawed by the said mill, and sold by the said Wright, and to one-half of the lumber remaining unsold; and notwithstanding said mill has been constantly engaged in sawing lumber ever since the same went into operation until the present time, and is still engaged in sawing, and large quantities of lumber sawed therein have been sent to market, and sold by said Wright, and the money therefor received by him, and that he is still engaged in sawing and selling the lumber, the products of the said mill, he has hitherto wholly failed to account with complainant for his share of the products of said mill, or of the proceeds of the sales of said lumber, or to pay one cent thereof to complainant, except as be-

fore stated, as part of the one-half interest of the complainant in the machinery, labor, and materials furnished in the erection of said mill; that complainant has in vain sought a settlement of his share of the said proceeds with the said Wright, who pretends that the expenses of running said mill consumed all the proceeds of the sales of the lumber, and that more money is paid for the running of said mill, in outlay for labor and other pretended charges and expenses, than the amount of the sales of lumber sawed by said mill, and in excess of such proceeds of lumber, to the sum of several thousand dollars; that there is due complainant, as his share of the proceeds of the lumber sold from said mill by said Wright, a large sum of money, subject to no abatement for expenses incurred by said Wright in running said mill, and the precise amount of which can only be ascertained by referring the whole matter to a master or commissioner of the court to take and state an account of the sum due complainant; that neither party, in entering into the partnership, contemplated any other use of the said mill, than to the cypress timber on said tract of land, on which it was erected, and for the sawing of no other timber on any other tract of land or grown elsewhere; and the said Wright in violation of the contract of partnership, and without the consent of complainant, has ceased to procure cypress timber from the said " Buena Vista" tract of land of the complainant for the use of said saw-mill thereon, and has been for some time heretofore, and now is procuring other cypress timber from other persons to saw, and is sawing the same into lumber on said mill, and thereby defeating one of the objects the complainant had in view in entering into the partnership, to-wit: To turn his own cypress timber into productive capital; and that such provision justifies a dissolution of the partnership, and winding up the business thereof.

The bill further charges that said Wright, upon a fair settlement of said business, will be found in debt to complainant in an amount so large that he will not be able to pay the same, unless the stock of timber now on hand at said mill or

elsewhere belonging to the said Wright, procured from others, and lumber on hand in which he has half interest, and the interest he has in said mill, would be sufficient to pay and satisfy such indebtedness, and which complainant does not believe, and that he is in danger of losing a portion of what is due him. He therefore prays for an injunction to restrain the said Wright and his agents from removing any saw logs, cypress, or lumber belonging to said firm, or to the said Wright, out of the jurisdiction of the court or from said saw-mill, or from selling the same or any part thereof, and that a receiver be appointed to take charge of said business, and that on the final hearing, an account be taken and stated between complainant and said Wright, and if, upon the coming in of said account and the confirmation thereof, the said Wright be found indebted to the complainant, that a decree be made for the payment thereof, and for a seizure and sale of the interest of the said Wright in the said saw-mill, stock, timber, and lumber thereunto appertaining, to an amount sufficient to pay and satisfy said debt, and that said partnership be dissolved and its affairs wound up under the orders of the court.

On the 29th day of March, 1869, the defendant moved the court to dissolve the injunction, which had been granted in this case on the following grounds: 1st. Because there is no equity upon the face of the bill; 2d. Because no legal bond has been given in this case; 3d. Because the penalty in said bond is wholly insufficient, and the surety therein is insolvent. This motion was sustained by the court without stating, upon what ground, and the injunction dissolved. And at the same term of the court the complainant moved for the appointment of a receiver, which motion was overruled by the court; and from these decrees of the court in dissolving the injunction and overruling the motion for the appointment of a receiver, the complainant appeals to this court.

It appears from the affidavit of Wright, that the usual sawing of said mill per day in the best running season, was at

VOL. II—14

least six thousand feet; and from his testimony upon the hearing of said motions, that since the mill went into operation in September, 1865, he had sold lumber to an amount between twenty and twenty-three thousand dollars, and that the expenses of running the mill were about thirty thousand dollars, and that he had not bought any timber or saw logs himself, but his wife did buy some saw logs and lumber.

The propriety of the action of the court in dissolving the injunction is impeached by the appellant, and presents the first question for our consideration. The bill of complaint charges that neither party contemplated any use of the said mill than to saw the cypress timber on the complainant's said tract of land, on which the mill was erected, and for the sawing of no other timber, and that the said defendant, in disregard of the terms of the partnership, and without the consent of the complainant, has ceased to procure cypress timber from the said tract of land of the complainant, for the use of the saw-mill thereon, and has been for some time heretofore, and now is, procuring other cypress from other persons to saw, and is sawing the same into lumber on said mill, and thereby defeating one of the objects the complainant had in view in entering into the partnership, and that object was to turn his own cypress timber into productive capital. And this allegation is, to some extent, corroborated by the evidence of the appellee, who testified that his wife bought saw logs and timber. This was using the mill in a manner unauthorized by the terms of the contract of partnership, and would justify an injunction, and together with the loss of seven thousand dollars in running the mill for more than three years, would perhaps authorize a dissolution of the partnership. The injunction, therefore, could not have been properly dissolved for the want of equity on the face of the bill. But it must be conceded that the bond given on obtaining the injunction was clearly insufficient, yet the court should have given reasonable time to the appellant to make a new bond, and upon his failure to do so, within the time appointed, the injunction should be dissolved. Rev. Code, 548, art. 58. We

think the court erred in thus dissolving the injunction with-out giving time to make a new bond.

The remaining question for our decision is, did the court err in overruling the motion for the appointment of a receiver? "It must be admitted," said the master of the rolls, in Madgwith v. Winkle, 6 Beavan, 495, " that when an applica-tion is made for a receiver in partnership cases, the court is always placed in a position of very great difficulty. On the one hand, if it grants the motion, the effect of it is to put an end to the partnership, which one of the parties claims a right to have continued; and on the other hand, if it refuses the motion, it leaves the defendant at liberty to go on with the partnership, at the risk and probably at the great loss and prejudice of the dissenting party. Between these difficulties, it is not very easy to select the course which is best to be taken, but the court is under the necessity of adopting some mode of proceeding to protect, according to the best view it can take of the matter, the interests of both parties."

In order to justify the dissolution of a partnership, on the ground of misconduct, abuse or ill-faith of one of the parties, it is not sufficient to show that there is a temptation to such misconduct, abuse or ill-faith, but there must be an unequivo-cal demonstration, by overt acts or gross departures from duty, that the danger is imminent, or the injury already ac-complished. Story on Partnership, 464, § 288. Where a concern of any character or kind, covering a partnership, is broken up by controversial suits, and it is apparent that there can be no agreement between the parties in interest for its continuance, a receiver will be appointed. Williams v. Wilson, 4 Sandf. Chan., 379; Edwards on Receivers, 330. And a dissolution of a partnership may be granted and a receiver appointed on account of the gross misconduct of one or more of the parties. 1 Story's Eq., 635, § 672, a. To authorize the appointment of a receiver there must be some breach of the duty of a partner, or of the contract of partner-ship. Harding v. Glover, 18 Ves., 281.

It was the duty of the appellee to take the timber used at

the mill, from the tract of land on which it was erected, belonging to the appellant; and the getting timber elsewhere, as alleged in the bill of complaint, was a breach of that duty and of the contract of partnership. And if the mill sawed six thousand feet of lumber per day, and the running of the mill from the fall of 1865 to the commencement of this suit in the spring of 1869, brings the parties in debt seven thousand dollars, as stated by the appellee in his testimony, it would seem to be a business which neither party should desire to continue.

Upon the whole, we are of opinion that the case made by the bill authorizes the appointment of a receiver, and that, therefore, the court erred in overruling the application therefor.

For the reasons herein stated, the decrees of the court in dissolving the injunction and overruling the motion for the appointment of a receiver, will be reversed, and the cause remanded for further proceedings in accordance with this opinion, with leave to the appellee to answer the bill within sixty days from this date.